UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD THOMAS PATTERSON,

　　　　　Petitioner,

　　　　　　　　　　　　　　　　　　CASE NO. 5:07-CV-14211
　　v.　　　　　　　　　　　　　　　JUDGE JOHN CORBETT O'MEARA
　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

　　　　　Respondent.[1]

_____/

# REPORT AND RECOMMENDATION

I.　　RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.　REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　A.　*Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　B.　*Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . 5
　　C.　*Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　D.　*Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
　　E.　*Prosecutorial Misconduct and Bad Acts Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . 10
　　　　1.　*Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　　　2.　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　　　　　　a. Bad Acts Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
　　　　　　b. Appeal to Sympathy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
　　F.　*Miranda (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　　　　1.　*Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
　　　　2.　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
　　G.　*Ineffective Assistance of Counsel (Claims III-V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
　　　　1.　*Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
　　　　2.　*Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
　　　　　　a. Jury Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
　　　　　　b. Jury Influences/Sleeping Juror . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
　　　　　　c. Failure to Object to Petitioner's Statement and Prosecutorial Misconduct . . . . . . . . . 26
　　　　　　d. Advice Regarding Wife's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
　　　　　　e. Failure to Call Detective Cordoba . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
　　　　3.　*Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
　　H.　*Cumulative Error (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
　　I.　*Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . 32
　　　　1.　*Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
　　　　2.　*Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
　　J.　*Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
III.　NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

_____

　　　[1]By Order entered this date, Debra Scutt has been substituted in place of Sherry Burt as the respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas

corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate

of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Donald Thomas Patterson is a state prisoner, currently confined at the G.

Robert Cotton Correctional Facility in Jackson, Michigan.

        2.      On September 6, 2002, petitioner was convicted of third degree criminal sexual

conduct, MICH. COMP. LAWS § 750.520d, following a jury trial in the Bay County Circuit Court.  On

October 28, 2002, he was sentenced to a term of 7-15 years' imprisonment.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

        I.      IN A CHARGE OF CRIMINAL SEXUAL CONDUCT IN THE THIRD
                DEGREE IT IS REVERSIBLE ERROR FOR THE TRIAL COURT TO
                ADMIT "OTHER ACTS" PURSUANT TO MRE 404(b) CARTE BLANCHE
                WITHOUT INQUIRING INTO THE SPECIFIC BAD ACTS BEFORE THEY
                WERE DISCLOSED TO THE JURY.

        II.     IT IS A FIFTH AMENDMENT TO THE CONSTITUTION OF THE
                UNITED STATES DENIAL OF DUE PROCESS OF LAW FOR A COURT
                TO ALLOW INTO EVIDENCE BY A PRE-TRIAL MOTION PRIOR BAD
                ACTS WHEN THE TESTIMONY AT TRIAL BROUGHT IN OTHER
                ALLEGED BAD ACTS THAT WERE NOT FOUND WITHIN THE MRE
                404(b) EXCEPTIONS AND WITHOUT A WEIGHING OF THE
                PROBATIVE VALUE AGAINST THE PREJUDICE TO THE
                DEFENDANT.

        III.    A DEFENDANT IS ENTITLED TO RESENTENCING WHERE OV7 WAS
                IMPROPERLY SCORED AT 50 POINTS REPRESENTING BODILY
                INJURY OR TERRORISM WHERE IT IS UNDISPUTED THAT THE
                ALLEGED VICTIM SUFFERED NO BODILY INJURY AND THERE WAS
                NO EVIDENCE OF CONDUCT DESIGNED TO SUBSTANTIALLY
                INCREASE THE FEAR AND ANXIETY THAT THE VICTIM SUFFERED

DURING THE ALLEGED OFFENSE.

IV.     A DEFENDANT IS ENTITLED TO RESENTENCING WHERE OV 8 WAS IMPROPERLY SCORED AT 15 POINTS REPRESENTING ASPORTATION WHERE IT IS UNDISPUTED THAT THE ALLEGED VICTIM WAS NOT ASPORTED AND THERE WAS NO EVIDENCE OF ASPORTATION.

V.      A DEFENDANT IS ENTITLED TO RESENTENCING WHERE OV 4 WAS IMPROPERLY SCORED AT 10 POINTS REPRESENTING PSYCHOLOGICAL INJURY TO A VICTIM WHERE IT IS UNDISPUTED THAT THE ALLEGED VICTIM DID NOT SPEAK OF PSYCHOLOGICAL INJURY AT TRIAL.

VI.     A DEFENDANT IS ENTITLED TO RESENTENCING WHERE THERE IS A DEPARTURE FROM THE GUIDELINES BASED NOT UPON THE OFFENSE; BUT BASED UPON OTHER MRE 404(b) EVIDENCE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Patterson*, No. 244691, 2004 WL 895874 (Mich. Ct. App. Apr. 27, 2004) (per curiam).

        4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan

Supreme Court, and raised two additional claims:

I.      IS IT REVERSIBLE ERROR FOR THE TRIAL COURT TO ADMIT "OTHER ACTS" PURSUANT TO MRE 404(b) AND IS IT A VIOLATION OF THE DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA?

II.     IS THE DEFENDANT ENTITLED TO RESENTENCING WHEN THE TRIAL COURT ERRORED [sic] IN DEPARTING BY NOT FOLLOWING MCL 769.34(3), AND VIOLATED DEFENDANT'S 5, 6, 8, 14 AMENDMENT RIGHTS, AND BY BASING ITS DEPARTURE ON DEFENDANT'S REFUSAL TO ADMIT GUILT, AND BY FAILING TO ARTICULATE THE NEED FOR DEPARTURE, AND BY NOT REVIEWING ACCURACY OF SENTENCING INFORMATION, AND BY FAILING TO CONSIDER POSITIVE ASPECTS OF DEFENDANT AND COMMUNITY LETTERS?

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People*

*v. Patterson*, 471 Mich. 921, 688 N.W.2d 829 (2004).

5.      On February 13, 2006, petitioner filed a motion for relief from judgment in the trial

court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      THE CUMULATIVE EFFECT OF THE PROSECUTOR'S MISCONDUCT
DENIED DONALD PATTERSON HIS RIGHT TO A FAIR TRIAL AS
GUARANTEED BY THE DUE PROCESS CLAUSES OF THE STATE AND
FEDERAL CONSTITUTIONS.

II.     THE DEFENDANT WAS PREJUDICED BY THE FAILURE OF THE
POLICE DETECTIVE HARRIS TO READ HIM HIS <u>MIRANDA</u>
WARNINGS VIOLATING HIS RIGHT AGAINST SELF-INCRIMINATION
AND HIS RIGHT TO COUNSEL AS GUARANTEED BY THE DUE
PROCESS CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS.

III.    THE DEFENDANT WAS DENIED HIS 6TH AMENDMENT TO THE U.S.
CONST. RIGHT TO A[N] IMPARTIAL JURY AND WAS PREJUDICED
BY FAILURE TO SEAT AN IMPARTIAL JURY DUE TO FAILURE BY
TRIAL COUNSEL TO OBJECT FOR CAUSE OR TO USE A
PEREMPTORY STRIKE TO PREVENT SEATING A PREJUDICED
JUROR AFTER HAVING BEEN INSTRUCTED TO DO SO BY THE
DEFENDANT.

IV.     THE DEFENDANT WAS PREJUDICED BY THE INEFFECTIVE
ASSISTANCE OF TRIAL COUNSEL BEFORE AND DURING TRIAL.
THIS OCCURRED WHEN COUNSEL STATED THAT DEFENDANT'S
<u>MIRANDA</u> RIGHTS NEED NOT BE READ TO HIM PRIOR TO
QUESTIONING AND REFUSED TO OBJECT TO THE ADMISSION OF
THE STATEMENTS AT TRIAL.   TRIAL COUNSEL WAS ALSO
INEFFECTIVE BY TELLING THE DEFENDANT'S WIFE DEBRA AND
HIM THAT THERE WAS NO HUSBAND-WIFE PRIVILEGE AND SHE
HAD TO TESTIFY AFTER BEING SUBPOENAED.   ALSO TRIAL
COUNSEL WAS INEFFECTIVE IN NOT CALLING DETECTIVE
CORDOBA AS A WITNESS AT TRIAL TO IMPEACH THE ALLEGED
VICTIM'S STATEMENTS. ALSO TRIAL COUNSEL WAS INEFFECTIVE
FOR NOT TIMELY RAISING AND PRESERVING THE ISSUES
PRESENTED HERE IN ISSUES I-III.

V.      APPELLATE COUNSEL WAS INEFFECTIVE IN NOT BRIEFING THE
ISSUES I-IV ABOVE IN APPEAL OF RIGHT OR MAKING [A] MOTION
FOR AN EVIDENTIARY HEARING AND/OR <u>GINTHER</u> HEARING ON
THE INEFFECTIVENESS OF TRIAL COUNSEL. APPELLATE COUNSEL
WAS ALSO INEFFECTIVE IN NOT NOTIFYING THE DEFENDANT OF
HIS RIGHT TO WRITE A PRO PER, OR STANDARD 11, BRIEF ON THE
ISSUES THAT THE APPELLATE ATTORNEY DIDN'T BRIEF, BUT

4

WHICH THE DEFENDANT STILL THOUGHT HAD MERIT.

VI.   CUMULATIVE ERROR REQUIRES RELIEF FROM JUDGMENT.

On January 11, 2007, the trial court denied petitioner's motion for relief from judgment, concluding

that the claims were barred pursuant to MICH. CT. R. 6.508(D)(3) because petitioner failed to establish

good cause for failing to raise the claims on direct appeal.  The Michigan Court of Appeals and

Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based

on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

*People v. Patterson*, 480 Mich. 892, 738 N.W.2d 720 (2007); *People v. Patterson*, No. 275948 (Mich.

Ct. App. Sept. 24, 2007).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on October 3, 2007.  As grounds for the writ of habeas corpus, he raises the six claims raised in his

motion for relief from judgment.  Petitioner filed a brief in support of the petition on December 17,

2007.

7.      Respondent filed her answer on March 20, 2009.  She contends that petitioner's claims

are barred by petitioner's procedural default in the state courts.

8.      Petitioner filed a reply to respondent's answer on April 27, 2009.

B.   *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the sexual assault of his adopted daughter.  The evidence

adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendant's oldest daughter, the victim in this case,[fn1] testified at trial that
> late in the summer of 1999, she moved from her parents' house in Bay City to an
> apartment that she shared with her fiancé. On one occasion when the victim visited her
> parents' house between August 1999 and November 1999, defendant told her to go to
> the basement because she owed him "checks" and "he wanted to get 'em all caught up
> before [her upcoming] wedding." When the two were near the workbench in the
> basement, defendant told the victim to pull her pants and underwear down and bend

5

forward. After applying a condom and Vaseline, defendant anally penetrated the victim. The victim said that she complied with defendant's instructions because she did not want to anger defendant and wanted her family to attend her wedding.

> [fn1]. Testimony revealed that defendant and his wife adopted the victim, defendant's biological niece, when she was five or six years old.

According to the victim, the term "checks," which she mentioned in her description of the incident underlying the charge against defendant, referred to a system that defendant instituted several years earlier, whereby defendant told the victim that she owed him "checks" for getting her out of trouble with her mother or for giving her special privileges. When defendant "collected" the "checks," as he did numerous times over a period of several years, he required the victim to submit to sexual activities that varied depending on the type of check he was collecting. The victim testified that if she owed defendant a "back check," she was required to submit to anal intercourse; if she owed a "regular check" she was required to permit defendant to touch her private parts; and if she owed a "front check" she was supposed to submit to vaginal intercourse. Although she "owed" defendant "front checks" over the years, she was able to convince him to trade the "front check" for a higher number of "back" or "regular checks" and never engaged in vaginal intercourse with defendant. Defendant collected "checks" from the victim in various locations, including her bedroom, near the workbench in the basement, and in the car. The victim believed that on certain occasions, defendant deliberately made trouble for her so that she would owe him more "checks." She stated that if she did not comply, defendant would report to his wife that the victim had a bad attitude.

Some time after the incident in the basement of defendant's home that occurred between August 1999 and November 1999, the victim learned that her younger sister, who was still living with defendant, had been getting into trouble frequently. The victim testified that after receiving this information, she reported defendant's conduct against her to the police out of concern that defendant may have been abusing her sister as well.

Detective David Harris of the Bay City Police Department testified that he spoke with defendant in May 2001 and advised him of the accusations against him. When he asked defendant what the word "check" meant to him, defendant hesitated and his face turned red. Defendant responded by asking Detective Harris the same question and then asking him, "What does she say it means?" Detective Harris testified that he had not mentioned the victim's use of the term "check" at that point in his conversation with defendant.

Defendant testified that he did not engage in any sexual conduct with the victim. He further testified that the victim was a discipline problem and frequently threatened to get back at her adoptive parents when she became angry with them. Defendant's wife, youngest daughter, and other witnesses testified in support of defendant. The jury convicted defendant as charged of one count of third-degree criminal sexual conduct.

*Patterson*, 2004 WL 895874, at \*1-\*2, slip op. at 1-2.

C.     *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally default, it is still necessary to consider the claims on the merits.  Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show,

7

*inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Prosecutorial Misconduct and Bad Acts Evidence (Claim I)*

Petitioner first contends that he was denied a fair trial by various instances of prosecutorial misconduct. Specifically, petitioner contends that the prosecutor introduced impermissible other acts evidence, and impermissibly appealed to the jurors' sympathy for the victim. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the

10

Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Similarly, for habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to

11

constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

2.    *Analysis*

a. *Bad Acts Evidence*

Petitioner first contends that he was denied a fair trial by the admission of other acts evidence relating to prior sexual assaults and disciplining of the victim, and by the prosecutor's arguments with respect to these matters. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). As the Michigan Court of Appeals explained, the other acts evidence admitted at petitioner's trial "had significant probative value in that it provided the context for the victim's testimony, corroborated her testimony concerning the charged act, and rebutted the defense of fabrication." *Patterson*, 2004 WL 895874, at *4, slip op. at 4. Thus, the prior acts testimony was relevant in petitioner's trial, and petitioner therefore cannot show that he was denied a fair trial by the introduction of the evidence.

Nor does the prosecutor's alleged failure to give sufficient pre-trial notice of this evidence as required by Rule 404(a)(2) provide a basis for habeas relief. This claim likewise raises solely an issue of state law. *See Richardson v. Evans*, 99 F. 3d 1150, 1996 WL 603278, * 3 (10th Cir. October 22,

1996); *Doss v. Bock*, No. 00-10030, 2002 WL 1554363, * 13 (E.D. Mich. July 15, 2002) (Lawson, J.) (prosecutor's alleged failure to give prior notice of intent to introduce evidence of defendant's and other witnesses' wrongful acts did not rise to level of a due process violation).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Appeal to Sympathy

Petitioner also contends that the prosecutor improperly appealed to the jurors' sympathies during *voir dire* and closing argument.  During *voir dire*, the prosecutor told the prospective jurors that he would ask them about their last sexual experience, and then told them that he was not in fact going to do so but wanted to put the jurors in the frame of mind that the victim would be in when she testified.  *See* Trial Tr., Vol. I, at 53-55.  The prosecutor also questioned the prospective jurors about judging the truth of children and adults, and about whether jurors would want to protect someone close to them.  *See id*. at 67-68.  During opening statement, the prosecutor asked the jury to "[i]magine, if you would, a little girl, scared, alone.  She's moved from place to place . . . . And then her aunt and uncle come to her rescue basically and gave her a home and became her mother and father. . . .  Well, Leslie Wallace will tell you that she looked to her parents for approval and love and all the necessary things of life.  And that she looked through her child-like eyes, with her child-like feel – fears at her parents."  *Id*. at 105.  During closing argument, the prosecutor argued that the evidence showed that the victim was a "second-class citizen" in the household, who was not considered a real part of the family and was only a "sexual tool" for petitioner.  *See id*., Vol. III, at 6; *see also*, *id*. at 17.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the *voir dire* comments, the prosecutor's questions were fairly designed to test whether the jurors could judge the credibility of the witnesses, in particular the victim who was a

minor throughout a large portion of the time frame leading to the charges against petitioner. With respect to the other comments, although the prosecutor's language may have been somewhat emotional, the prosecutor did not ask the jury to convict out of sympathy for the victim or appeal to the jury to act as the conscience of the community. Further, the comments concerning the victim's role in the family were fair comments based on the testimony offered at trial. Even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Miranda (Claim II)*

Petitioner next contends that his statement to the police was improperly admitted because it was taken in the absence of advice concerning his rights to remain silent and to counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.      *Clearly Established Law*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause.

14

As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439.  Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow."  *Id.*, at 442.  Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings.  These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of any attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires."  *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted).  The *Miranda* Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474.  Similarly, if the suspect requests counsel "the interrogation must cease until an attorney is present."  *Id.*; *see also*, *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension.  *See Dickerson*, 530 U.S. at 438-40.  Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review.  *See id.* at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

The *Miranda* rule protects a suspect's Fifth Amendment privilege not to be "compelled" to incriminate himself.  The rule is based on the notion that "custodial police interrogation, by its very nature, isolates and pressures the individual," and therefore "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" *Dickerson*, 530 U.S. at 435 (quoting *Miranda*, 384 U.S. at 439). To guard against this, *Miranda* "laid down 'concrete guidelines for law enforcement agencies and

15

courts to follow.'" *Id.* (quoting *Miranda*, 384 U.S. at 442).  This rationale for the rule, however, also limits its applicability to only those interrogations which are "custodial."  *See Thompson*, 516 U.S. at 102; *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (per curiam).  "Custody for *Miranda* purposes has been . . . narrowly circumscribed."  *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984).  As the Court explained in *Miranda*, an interrogation is custodial only where the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444.  In other words, although a court must consider the totality of the circumstances surrounding the interrogation, the ultimate inquiry is whether there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  *Murphy*, 465 U.S. at 430 (internal quotation omitted); *see also*, *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).

2.    *Analysis*

Petitioner contends that Detective Harris's questioning of him without advising him of his *Miranda* rights violated his Fifth Amendment privilege against self-incrimination.  The Court should reject this claim.

The record is devoid of any evidence that petitioner was in custody at the time of his interrogation by Detective Harris.  The trial testimony of both Detective Harris and petitioner establish that Detective Harris questioned petitioner at his place of employment.  *See* Trial Tr., Vol. I, at 208; Vol. II, at 106-07.  This fact is also confirmed by petitioner's affidavit, a copy of which is attached as Exhibit B to his state court motion for relief from judgment.  Although petitioner contends that he was taken to an "interrogation" room at work, he does not allege that the officers formally placed him under arrest, indicated that he was under arrest, or otherwise forced him to accompany them to the interrogation room or remain there at any time he wanted to terminate the interview.  Nor

does the record show that petitioner was placed under arrest at the conclusion of the interview.  That petitioner subjectively may not have felt free to leave the interview is irrelevant in determining whether petitioner was subjected to a custodial interrogation.  as the Supreme Court has explained, "the initial determination of custody depends upon the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323.  Thus, petitioner's subjective belief that he was not free to leave does not affect the analysis.  Rather, "the only relevant inquiry is how a reasonable man in [petitioner]'s position would have understood his situation." *Berkener v. McCarty*, 468 U.S. 420, 442 (1984); *see also*, *Thompson*, 516 U.S. at 112; *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).  There is no objective indication that petitioner's freedom of action had been restrained in any manner, nor does petitioner allege any such objective facts in his affidavit.  For example, petitioner does not allege that he was handcuffed, formally placed under arrest, or even separated from the general public at the time the officers questioned him regarding his confession.  Petitioner was not taken to the police station against his will, was not restrained during the interview, and was not arrested at the conclusion of the interview.  In these circumstances the record establishes that petitioner was not "in custody" during the interview, and thus *Miranda* is inapplicable.  *See United States v. Crossley*, 224 F.3d 847, 861-62 (6th Cir. 2000); *United States v. Mahan*, 190 F.3d 416, 421-22 (6th Cir. 1999).  This conclusion is not altered by petitioner's allegation that he was summoned to the interview by his supervisor.  *See Mahan*, 190 F.3d at 422.

Further, it is irrelevant that the police may have at this time focused on petitioner as a suspect.  As the Supreme Court has explained, "[i]t was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial interrogation."

17

*Beckwith v. United States*, 425 U.S. 341, 346-47 (1976) (internal quotation omitted). Thus, the *Miranda* requirements do not extend to the otherwise non-custodial interrogation merely because Detective Harris had focused on petitioner as a suspect in a criminal case. *See Stansbury*, 511 U.S. at 323-34; *Berkener*, 468 U.S. at 442; *Murphy*, 465 U.S. at 431; *Mathiason*, 429 U.S. at 495. Because the record establishes that petitioner was not in custody at the time of his interview, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

G.      *Ineffective Assistance of Counsel (Claims III-V)*

Petitioner next contends that he was denied the effective assistance of counsel at trial. Specifically, petitioner contends that his trial counsel was ineffective for: (1) failing to remove biased jurors for cause or peremptorily; (2) failing to object to extraneous influences on the jury and to a sleeping juror; (3) failing to object to his custodial statement; (4) advising his wife that she could not claim a husband-wife privilege; (4) failing to call Detective Cordoba as a witness to impeach the victim's statements; and (5) failing to object to the bad acts evidence and prosecutorial misconduct. Petitioner also contends that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

---

[2]Petitioner also contends that he is entitled to an evidentiary hearing on this claim. However, in determining whether an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also, Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As discussed above, the allegations in petitioner's affidavit, even if true, fail to establish that petitioner was subjected to custodial interrogation. Accordingly, the Court should conclude that an evidentiary hearing is not necessary.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.    *Trial Counsel*

a.  *Jury Selection*

Petitioner first contends that trial counsel was ineffective during jury selection for failing to challenge several jurors for cause.  "[J]ury selection is a process that inherently falls within the

expertise and experience of trial counsel." *Palacio v. State*, 511 S.E.2d 62, 67 (S.C. 1999) (citing cases). Because of this, counsel's decisions in the jury selection process are the type of strategic decisions which are particularly difficult to attack. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D. Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science. There is nothing unreasonable or professionally deficient in a defense counsel's informed decision to rely upon his own reading of venire members' verbal answers, body language, and overall demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998). Thus, petitioner bears a heavy burden in demonstrating that counsel's performance in connection with the jury selection process was deficient. Further, in order to establish prejudice attributable to a counsel's failure to remove a juror, petitioner must show that the juror was actually biased. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *Irons v. Lockhart*, 741 F.2d 207, 208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle v. Calderon*, 919 F. Supp. 1367, 1389 (N.D. Cal. 1996). With these standards in mind, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner first argues that counsel was ineffective for failing to challenge for cause or use a peremptory challenge against Juror Martin. During *voir dire*, Juror Martin indicated that he has a Ph.D. in psychology, and primarily worked in the area of family counseling involving physical abuse of children. *See* Trial Tr., Vol. I, at 41, 43. His cases primarily were referred from schools, and usually involved divorce cases. *See id*. at 47-48. Juror Martin indicated that in such cases he "always side[s] for the kid." *Id*. at 48. Despite this statement, however, petitioner cannot show that Juror Martin was biased against him or that counsel was deficient for failing to remove Juror Martin. Juror Martin did not indicate that he always *believes* the child; rather, his statement more naturally implies

20

that he looks out for the child's interest.  And defense counsel had good reason to believe that Juror Martin might be favorable to the defense.  In the first place, Juror Martin indicated that he was never directly involved in a case of alleged sexual misconduct.  *See id*. at 43.  More importantly, Juror Martin agreed that he had come across cases where false allegations of abuse were made against a parent, *see id*. at 77-78, the exact defense that petitioner was presenting in his case.  Further, in describing his past experience as a juror in a criminal case, Juror Martin indicated that he "got to be fair and if – one of the things that the defense attorney said to us, quite nicely, he said, Don't form any conclusion–any conclusions until every bit of evidence is in, and when it was all over with, I could see why he said it."  *Id*. at 34.  From this statement and Juror Martin's first hand knowledge that false allegations of abuse actually occur, counsel could have reasonably concluded that Juror Martin would be favorably disposed to listen and fairly consider the defense case.  Thus, petitioner cannot show that counsel was ineffective for failing to remove Juror Martin.

Petitioner next identifies Jurors Chase, Kochany, Stefanisk, and Prondzinkski, each of whom indicated that they had a family member who was the victim of a sexual assault.  *See id*. at 37-38, 56-60, 81, 82.  However, each of these jurors was excused for cause by the court.  *See id*. at 60, 64, 82, 83.  Likewise, Juror Zippler, who indicated that she provided child care for a sergeant with the Bay County Sheriff's Office, *see id*. at 30, 48, was excused for cause.  *See id*. at 64.  Because each of these jurors was excused for cause, petitioner cannot show that counsel was ineffective in the handling of these jurors.

Petitioner next contends that counsel should have challenged for cause Jurors Amon, Chase, and Pawlaczyk.  Juror Chase indicated that she was a medical social worker and had seen sexual assault cases in the hospital.  *See id*. at 40, 43.  Juror Amon indicated that a family member had been the victim of a sexual assault about 20 years before petitioner's trial, but that she could remain fair.

21

*See id*. at 38-39.  She also indicated that she was a social worker with a non-profit organization helping adults with mental illness, but her work did not involve any cases of sexual assault.  *See id*. at 42.  Juror Pawlaczyk indicated that his brother-in-law was a Bay City police officer, but that they did not talk about individual cases and he could set aside this relationship and fairly judge the credibility of the witnesses, including the police officers.  *See id*. at 27-28, 76-77.  Although counsel exercised a peremptory challenge with respect to each of these jurors, *see id*. at 79, 91, petitioner contends that counsel should have challenged them for cause.  However, petitioner has offered nothing to show that such challenges for cause would have been successful.  Each of these jurors affirmed that he or she could set aside his or her personal views and decide the case based on the evidence, and petitioner has pointed to nothing to call into question the sincerity of their assurances. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim).  The fact that Juror Amon's sister had been the victim of a sexual assault 20 years prior to petitioner's trial does not alone demonstrate bias. *See Gonzales v. Thomas*, 99 F.3d 978, 989-90 (10th Cir. 1996) (juror not presumed biased in rape case even though she had been the victim of a sexual assault 25 years prior to petitioner's trial); *see also*, *United States v. Gonzalez-Soberal*, 109 F.3d 64, 70 (1st Cir. 1997); *United States v. Gibbs*, 125 F. Supp. 2d 700, 708-09 (E.D. Pa. 2000), *aff'd*, 77 Fed. Appx. 107 (3d Cir. 2003).  Further, the fact that Juror Pawlaczyk was related to a police officer did not alone provide a basis to challenge him for cause.  *See Baze v. Parker*, 371 F.3d 310, 326 (6th Cir. 2004); *McQueen v. Scroggy*, 99 F.3d 1302, 1319-20 (6th Cir. 1996); *Paradis v. Arave*, 954 F.2d 1483, 1491 (9th Cir. 1992) (habeas relief not

warranted based on counsel's failure to challenge juror who attended church at which prosecuting attorney was a bishop), *vacated in part on other grounds*, 507 U.S. 1026 (1993). Thus, petitioner cannot show that counsel was ineffective for failing to challenge these jurors for cause.

Finally, petitioner points to counsel's failure to challenge Jurors Stender, Lonsway, Lipinski, Groch, and Scheffler. The trial judge indicated that she thought she knew Juror Stender. *See* Trial Tr., Vol. I, at 66. Juror Lonsway indicated that he had graduated with Jeff Day, an assistant prosecutor for the county who was not involved in petitioner's case. He also indicated, however, that he had not maintained a friendship with Day since graduation and that the relationship would not affect his decision. *See id.* at 44-45. Juror Lipinski indicated that his cousin was a probation officer with the county, but that he never discussed cases with his cousin and that the relationship would not affect his ability to decide the case fairly. *See id.* at 29, 67. Juror Groch indicated that he lived next door to the Bay County Sheriff, but that this would not influence his decision. *See id.* at 31. Likewise, Juror Scheffler indicated that his brother-in-law was a police officer in Cleveland, but that they did not discuss cases and he could be fair despite this relationship. *See id.* at 29-30, 77. In each case, the jurors indicated that they could be fair, and petitioner has pointed to nothing beside his own speculation to call into question their assurances. Further, as indicated above, the mere fact that these jurors had some relationship with law enforcement officials does not demonstrate bias. Thus, petitioner cannot show that he was prejudiced by counsel's failure to remove these jurors.

Counsel, who was conducting the voir dire and could weigh the jurors' answers and demeanors, was in the best position to judge the credibility of these assertions. Petitioner has offered nothing except for speculation to suggest that the jurors ultimately seated in his case were not, in fact, impartial. In these circumstances, petitioner cannot demonstrate that counsel was ineffective in connection with the selection of the jury.

23

*b. Jury Influences/Sleeping Juror*

Petitioner next contends that counsel was ineffective for failing to properly challenge an extraneous influence on the jury and the fact that a juror was sleeping during the trial. Petitioner, relying on the affidavit of his wife, contends that Walt Green, a friend of the victim, was saying things out loud while a short distance away from the jury and making faces at the defense witnesses as they were testifying. At one point, the court did, upon counsel's request, instruct the spectators not to show any reaction or emotion to a witness's testimony. *See* Trial Tr., Vol. II, at 85. Petitioner also contends that one juror fell asleep at times during the trial.

Petitioner's claim fails because he has failed to provide any evidence that the jury was affected by an extraneous influence. Although the affidavit of petitioner's wife indicates that Green was making statements, she does not indicate what those statements were, how they were related to the case, or how they may have affected the jury. Indeed, there is no evidence that the jurors actually heard any of the statements. Without some evidentiary support to show that the jury was actually tainted by Green's comments, petitioner has failed to satisfy his burden of demonstrating that counsel was deficient or that he was prejudiced by counsel's performance.

Likewise, petitioner cannot show that counsel was ineffective with respect to the sleeping juror issue. In support of this claim, petitioner points to his own affidavit and those of his wife and brother, all of whom claim that at various points they saw one or more jurors closing their eyes and their heads nodding. At the outset, these affidavits provide thin evidence that any of the jurors were actually sleeping and unable to hear the proceedings. *See Ciaprazi v. Senkowski*, 151 Fed. Appx. 62, 64 (2d Cir. 2005); *Hasan v. Ishee*, No. 1:03-cv-288, 2006 WL 3253081, at *23 (S.D. Ohio Aug. 14, 2006). In any event, even if a juror was sleeping during a portion of the trial, petitioner has failed to meet his high burden of demonstrating that counsel was ineffective. First, petitioner has failed to offer

24

anything to show that counsel's performance was deficient.  "[E]ven if trial counsel saw a distracted juror, it was among the objectively reasonable strategic choices for counsel to forgo an objection. The juror in question may have been one that defense counsel favored and wanted to keep. Or counsel may have concluded that pursuing the matter would have been fruitless, since the trial court had discretion to decide how to remedy such a problem and had already called the jurors to attention."  *Guinyard v. Keane*, 56 Fed.Appx. 44, 46 (2d Cir.2003); *see also*, *Ciaprazi*, 151 Fed. Appx. at 64 ("[I]t is also quite possible that an effective defendant's counsel would in some situations prefer to keep the allegedly dozing juror in place, and try for the possibility of an acquittal or a hung jury."); *cf. United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000) ("A court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to hand a sleeping juror."). Further, petitioner has not shown that he was prejudiced in that, had counsel objected or moved to remove the sleeping juror, there is a reasonable probability that the result of the proceeding would have been different.  His "general assertion that jurors slept through part of [the trial] . . . are too vague to establish prejudice."  *United States v. Tierney*, 947 F.2d 854, 868-69 (8th Cir. 1991); *see also*, *Rieth v. Burton*, No. 05-C-513, 2006 WL 1479541, at *3 (E.D. Wis. May 24, 2006) ("Although Rieth is entitled to twelve attentive jurors in the first instance, under an ineffective assistance review the improper conduct of one of them does not establish a reasonable probability-or even a slight one-that the outcome of his trial would have been different."); *cf. Tanner v. United States*, 483 U.S. 107, 126 (1987) (under rule permitting inquiry into jury deliberations based on incompetence of jurors, incompetence of jurors was not shown by evidence which "suggested, at worst, that several of the jurors fell asleep at times.").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Failure to Object to Petitioner's Statement and Prosecutorial Misconduct

Petitioner next contends that counsel was ineffective for failing to object to the introduction of his statement to Detective Harris and to the instances of prosecutorial misconduct identified in his first claim.  As explained above, however, the Michigan Court of Appeals determined that the other acts evidence was properly admitted as a matter of state law.  In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  Likewise, as explained above the prosecutor's questions and comments were not improper, and petitioner's statement was not taken in violation of his *Miranda* rights.  Thus, any objection by counsel to the prosecutor's comments, the other acts evidence, or petitioner's statement would have been futile.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Advice Regarding Wife's Testimony

Petitioner next contends that counsel was ineffective for advising his wife, who had been subpoenaed by the prosecutor, that she could not refuse to testify on the basis of the marital privilege.  This claim fails for two reasons.

First, petitioner has identified no prejudice arising from his wife's testimony.  On the contrary, although called by the prosecutor petitioner's wife testified favorably to petitioner.  She denied any knowledge of sexual abuse, and supported petitioner's defense that the victim was frequently getting into trouble and threatening to take revenge on both her and petitioner.  Because his wife's testimony

26

actually favored petitioner, there is not a reasonable probability that the jury would have acquitted petitioner had she not testified.

Second, petitioner cannot show that counsel's advice was erroneous.  At common law, the "marital privilege" encompassed two related, yet distinct privileges.  The "spousal" or "testimonial" privilege "bars one spouse from testifying for or against the other without the other's consent except" in certain situations, while the "confidential communications" privilege "bars one spouse from testifying as to any communications made by one to the other during the marriage without the consent of the other."  *People v. Fisher*, 442 Mich. 560, 568, 503 N.W.2d 50, 53 (1993) (internal quotation omitted).  Both aspects of the privilege are codified in Michigan's marital privilege statute, MICH. COMP. LAWS § 600.2162, the former in subsections (1) and (2), and the later in subsection (7).  Notwithstanding these privileges, however, the Michigan statute further provides that "[t]he spousal privileges established in subsections (1) and (2) and the confidential communications privilege established in subsection (7) do not apply . . . in a prosecution for a crime committed against a child of either or both or a crime committed against an individual who is younger than 18 years of age."  MICH. COMP. LAWS § 600.2162(3)(c).  While it is true that here the victim was no longer a minor at the time of the crime for which petitioner was convicted, § 600.2162(3)(c) is not limited to a minor child of a defendant, and extends to adult children.  Although there is no Michigan case law directly addressing this issue, because the exception applies to all crimes committed against a minor under 18 years of age, limiting the exception to the minor child of a defendant would render that phrase of the exception meaningless surplussage, a construction at odds with Michigan law.  *See People v. McGraw*, 484 Mich. 120, 126, 771 N.W.2d 655, 659 (2009) ("In interpreting a statute, we avoid a construction that would render part of the statute surplussage or nugatory."); *Mason v. City of Menominee*, 282 Mich. App. 525, 528, 766 N.W.2d 888, 891 (2009) ("Courts must give effect to

27

every word, phrase, and clause in a statute and avoid a construction that renders nugatory or surplussage any part of a statute."). Further, under Michigan law "[t]he spousal privilege should be narrowly construed, and exceptions to the privilege should be broadly construed." *People v. Eberhardt*, 205 Mich. App. 587, 589-90, 518 N.W.2d 511, 513 (1994). Thus, counsel's advice with respect to the marital privilege issue was not erroneous. Because petitioner can establish neither that counsel's advice was erroneous nor that he was prejudiced by his wife's testimony, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Call Detective Cordoba

Finally, petitioner contends that his trial counsel was ineffective for failing to call Detective Cordoba, the first police officer to interview the victim, to impeach the victim's testimony. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment).

28

Here, petitioner cannot establish that counsel was ineffective for failing to call Detective Cordoba as a witness. Petitioner contends that Detective Cordoba could have impeached the victim's testimony that the sexual assault with which he was charged occurred after she had left the home. This argument is based on a copy of Detective Cordoba's report, attached as an exhibit to petitioner's brief in the Michigan Court of Appeals in connection with his motion for relief from judgment. However, the report does not necessarily impeach the victim's testimony. The report is not a full transcription of the interview, and is not signed by the victim. Rather, the report merely states that Detective Cordoba "talked with Mrs. Wallace at approximately 1730Hrs. on 4/24/01 and she reported the following," followed by a bullet-list of information, apparently in Detective Cordoba's own words. It is true that the list contains the following two assertions: "My uncle abused me sexually from the time I was 12 years old until I moved out," and "The last time he abused me was sometime in 1999, shortly before I moved out." Because of the format in which these assertions are presented, however, it is not clear how impeaching these statements would have been.

More importantly, however, petitioner cannot show that he was prejudiced because Detective Cordoba's report of the interview contained more damaging information corroborating the victim's testimony, and this corroboration would have been admissible had the impeaching portions of the report been admitted, both under the completeness rule, MICH. R. EVID. 106, and as a prior consistent statement, MICH. R. EVID. 801(d)(1)(B). The remaining allegations set forth in the interview, including the circumstances of the "check" system, are remarkably consistent with the victim's testimony at trial. In evaluating whether petitioner was prejudiced in failing to call Detective Cordoba to impeach the victim's testimony regarding the date of the last offense, "it is necessary to consider *all* the relevant evidence that the jury would have had before it if [counsel] had pursued the different path–not just the [impeachment] evidence [counsel] could have presented, but also the [corroborating

29

evidence] that almost certainly would have come in with it." *Wong v. Belmontes*, ___ U.S. ___, No. 08-1263, 2009 WL 3805746, at *3, slip op. at 6 (U.S. Nov. 16, 2009) (per curiam). Further, counsel had extensively attempted to impeach the victim with her statements to Detective Harris, both during her testimony and during Detective Harris's testimony. *See* Trial Tr., Vol. I, at 176-78, 185, 214-16, 219-20. In light of this impeachment evidence already before the jury, the format of Detective Cordoba's report, and the damaging corroborating evidence which Detective Cordoba's report contained which also would have come into evidence, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had counsel attempted to impeach the victim's testimony through Detective Cordoba's report. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

       3.    *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal.

H.    *Cumulative Error (Claim VI)*

Finally, petitioner contends that he was denied a fair trial by the cumulative errors identified above. The Court should conclude that petitioner is not entitled to habeas relief on this basis. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker*

*v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

I.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

    As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v.*

*Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding petitioner's habeas application, the Court should also deny a certificate of appealability for the reasons set forth above.  Petitioner's evidence and prosecutorial misconduct claims fall far short of the types of errors which deprive a defendant of a fair trial, and thus the Court's rejection of these claims is not debatable among reasonable jurists. Further, the record conclusively establishes that petitioner was not subjected to a custodial interrogation, and thus the Court's resolution of petitioner's *Miranda* claim is not reasonably debatable.  Because of this, the Court's resolution of petitioner's related ineffective assistance of

32

counsel claims is likewise not debatable among reasonable jurists.  With respect to petitioner's remaining ineffective assistance claims, Michigan law clearly rejects petitioner's claim relating to the marital privilege issue, and the record fails to establish and petitioner has failed to show that any biased juror was seated or that counsel was otherwise ineffective with respect to jury selection and the extraneous influence/sleeping juror issues.  Finally, because the Court's resolution of petitioner's claims is not reasonably debatable, it follows that the Court's resolution of petitioner's derivative appellate counsel and cumulative error claims is likewise not debatable among reasonable jurists.  Accordingly, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v.*

33

*Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


    s/Paul J. Komives
    PAUL J. KOMIVES
    UNITED STATES MAGISTRATE JUDGE

Dated: 11/20/09


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 20, 2009.
>
>     s/Eddrey Butts
>     Case Manager

34